**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| EDDIE C. WILSON, SR.  #317-625 | : |
| Plaintiff | : |
| v. | : CIVIL ACTION NO. RDB-06-2042 |
| AMERIQUEST MORTGAGE COMPANY et al. | : |
| Defendants | : |

oo000oo

**MEMORANDUM OPINION**

Pending is a pro se Complaint[1] for damages and injunctive relief filed by Eddie C. Wilson ("Wilson") against Ameriquest Mortgage Company ("Ameriquest") and AMC Mortgage Services, Inc. ("AMC") arising from a loan transaction.[2] This matter is before the Court based on the diversity of citizenship of the parties. *See* U.S. Const. Art. 3 § 2; 28 U.S.C. §§ 1331 & 1332.  Ameriquest and AMC (hereinafter referred to collectively as "Defendants") have filed a Motion to Dismiss, or in the Alternative, for Summary Judgment.  Plaintiff has filed a reply in opposition and Defendants have filed a reply in further support of their dispositive pleading.  The Court will construe the Defendants' dispositive motion as one for summary judgment. For the following reasons, the Motion for Summary Judgment will be granted in favor of Defendants.

**I. Background**

Wilson complains of alleged improprieties in connection with a September 22, 1998, refinancing transaction with Ameriquest.  Plaintiff borrowed $93,750 from Ameriquest and executed

---

[1]Wilson filed a "Corrected Complaint" after the Court granted Defendants' Motion for a More Definite Statement.  All references to the Complaint are to the "Corrected Complaint" (Paper #20) unless otherwise specified.

[2]Wilson also named Ann Brennan, Manager of Internal Controls as a defendant. As best as the Court can discern, other than generally naming Ms. Brennan, Wilson fails to raise any specific claims against her.  She will be dismissed as a party defendant.

a Deed of Trust pledging property at 5131 Benton Heights Avenue, Baltimore, Maryland as collateral. At that time, Wilson and Karen Goldman,[3] held title to the property. Wilson alleges that he refinanced the property to allow him to buy out Karen Goldman, remove Goldman from the Deed of Trust, pay off the open mortgage, and remove the lien from the Deed of Trust placed there by the Baltimore Investment Company.[4] The HUD-1A settlement sheet for the loan indicates disbursements of
$34, 572.34 to the Baltimore Investment Company, $10,000 to Karen Goldman, $3,000 to National Real Estate, and $1,748 to National Real Estate for title insurance.[5] Wilson alleges that in addition to providing the refinancing, Defendants insisted that they conduct the loan settlement.[6] Wilson fails to provide any documentation in support of this contention.

Defendants dispute Wilson's allegations in a verified declaration by Grace Schulz, Vice President in the Office of the President for AMC. Ms. Schulz attests that neither Ameriquest nor AMC ever received payment as a result of a title insurance claim on the Benton Heights Avenue property.[7] Additionally, Defendants note that Wilson agreed to pay $1,748 to National Real Estate, a title insurance company, for settlement services.[8]

Further, Wilson alleges that Karen Goldman attempted to convey her interest in the property

---

[3]Ms Goldman is not otherwise identified in the pleadings.

[4]Complaint at 4-5, ¶ 4.

[5]Complaint, Exhibit B at lines 1501, 1504, 1505, and 1108.

[6]Complaint at 4, 9 & 10.

[7]Affidavit of Grace Schulz, Defendants' Exhibit 1, ¶ 8.

[8]Affidavit of Grace Schulz, Defendants' Exhibit 1, ¶¶ 4 and 5, *see also* Exhibit 1A

to him by quitclaim deed prepared by Ameriquest.[9] The quitclaim deed, alleged by Plaintiff to be defective, was not recorded.[10] Wilson claims that he sought approval to use the property as Section Eight rental housing, but approval was denied because property records did not show him as the sole owner of the property.[11] He claims that Ameriquest was aware that he intended to use income from renting the property to pay the mortgage debt, and "the Defendants had a duty to correct the title issues associated with the refinancing settlement of Benton Heights Avenue but fail[ed] to do so."[12] Wilson avers that he was denied other loans using the property as collateral for the same reason.

Wilson defaulted on the loan on or about February 1, 1999.[13] According to Wilson, "[b]ecause the Defendants continually fail[ed] to answer the Plaintiff's calls, letters, and request for documentation to confirm his ownership of the Benton Heights Property, the Plaintiff stopped payments in an effort to force the Defendants to respond to his supplications."[14] Ameriquest then commenced foreclosure proceedings.

Lastly, Wilson alleges Defendants improperly received $147, 804.37 from "Fidelity National Title Company."[15] Fidelity National Title is not the name of the company that Wilson listed on his HUD form. Wilson filed the instant complaint on August 7, 2006.

## II. Claims Presented

---

[9] Complaint at 5, ¶ 5 .

[10] Complaint at 5,  ¶¶ 6-7 (p. 5); Exhibit G ¶ 14.

[11] Complaint at 6-7, ¶¶ 20-21.

[12] Complaint at 10, ¶ j.

[13] Affidavit of Grace Schulz, Defendants' Exhibit 1, ¶ 6.

[14] Complaint at 7, ¶ 22.

[15] Complaint, at 17, ¶ 25.

In the Complaint, Wilson raises claims of: 1) specific performance of contract; 2) conversion; 3) gross negligence/breach of duty; and 4) libel and defamation. The alleged events giving rise to these causes of action occurred more than seven years before the filing of the Complaint. Wilson claims, however, that Ameriquest received $147, 804.37 in title insurance proceeds on or about December 31, 2003, but failed to apply any of the proceeds to overdue taxes on the property.[16] Wilson alleges that receipt of these insurance proceeds constitutes common law conversion.[17]

### III.  Standard of Review

Fed. R. Civ. P. 56(c) provides :

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The Court should

---

[16] Complaint at 6, ¶¶ 15-17.

[17] Complaint at 12.

4

"view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## IV. Analysis

In Maryland, the three-year statute of limitations is applied to breach of contract, conversion, and negligence actions. A one-year limitations period applies to defamation actions. *See* Md. Code Ann., Cts & Judicial Proc. §§ 5-101[18] & 5-105 (2006).[19] In view of the applicable limitations periods, the Court will now consider each claim presented.

### A. Specific Performance

Wilson asserts that Defendants failed to perform on a contract to convey the Benton Heights Road property to him, and that he is entitled to enforce the contract.[20] The gravamen of his claim

---

[18] This provision states:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

[19] This provision states::

> An action for assault, libel or slander shall be filed within one year from the date it accrues.

[20] Defendants note that the Complaint does not allege that Defendant possessed the type of legal interest in the property that would have entitled them to convey it. Further, to the extent Wilson seeks specific performance to convey land, he neither identifies nor alleges the existence of a written contract to convey the property in question, thereby implicating Maryland's Statute of Fraud. *See* Md. Code Ann., Real Prop. § 5-104.

5

is that Defendants were responsible for conducting the "settlement"[21] and performing the "title work" in connection with the September 22 1998, loan transaction.[22] Plaintiff acknowledges that he was aware of title problems within "months" after the loan was made.[23]

Under Maryland law, a contract action accrues on the date of the alleged breach, and the three- year limitations period begins to run. *See Butler v. VisionAir, Inc.,* 385 F. Supp. 549, 554 (D. Md 2005); *The Catholic University of America v. Bragunier Masonry Contractors, Inc.*, 139 Md. App. 277, 297 (2001). Under the facts presented here, Wilson's cause of action accrued on September 22, 1998, and expired on September 21, 2001. In consequence, when the Complaint was filed on August 7, 2006, the applicable statute of limitations had long elapsed, For this reason, the claim is untimely. Additionally, as a factual matter, the pleadings show that Defendants did not conduct the settlement for the property.

**B. Conversion**

In Maryland, conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *See Allied Investment Corporation v. Jasen,* 354 Md. 547, 560 (1999). A three-year limitations period applies to conversion claims. *See Osborn v. Swetnam*, 221 Md. 216, 219 (1959). Wilson alleges that Defendants committed conversion by wrongfully receiving and retaining $147, 804.37 on December 31, 2003. He asserts these proceeds rightfully belonged to him. As noted earlier, Defendants deny

---

[21] Complaint at 9-10.

[22] Complaint at 10.

[23] In a letter to AMC dated March 24, 2003, Wilson complained that "months" after the loan transaction, when he attempted to refinance the property, he was told the property was not titled in his name. "A few months later" loans were denied for the same reasons. Complaint, Exhibit L.

6

ever receiving payment as a result of a title insurance claim on the property. [24] Wilson provides no evidence that he purchased title insurance from Fidelity National Title.

Wilson's conversion claim infers that Defendants misappropriated an insurance policy on which Wilson was the insured. Defendants argue that under this reasoning receipt of insurance proceeds amounts to conversion only if Defendants had previously misappropriated the policy and filed a claim. Defendants thus proffer that the cause of action accrued not in December of 2003, but at the time the loan closed on September 1998, thereby making this claim untimely.

Title insurance is an agreement to indemnify against loss arising from a defect in title to real property and is usually issued to the buyer of the property by the title company that conducts the title search." *Black's Law Dictionary*, 819 (8th Edition. 2004). Title insurance protects against loss or damage resulting from defects or failure of title to a particular parcel of realty, or from enforcement of a lien existing against it at the time of the insurance. Wilson's allegations here fail to recognize that he is a purchaser who owns the title insurance. If Wilson obtained title insurance on the property, then he may file a claim with his title insurance company if he believes there was a title defect. In light of the above, even if this claim were deemed timely filed, it fails to state a cause of action upon which relief can be granted.

**C. Gross Negligence and Breach of Duty**

Wilson next claims that "the Defendants were grossly negligent and breach[ed] their duty of care when processing the Plaintiff['s] settlement on the property," and that Defendants "failed to observe the standard of care required by law under the circumstances when performing a property

---

[24] Defendants generally acknowledge that "Although neither Ameriquest nor AMC ever made a title insurance claim on the property, insurance claims have been filed and paid in other contexts." Affidavit of Grace Schulz, Defendants' Exhibit 1, ¶ 9.

7

settlement."[25]   Plaintiff alleges Defendants' conduct in connection with settlement and recording constituted a breach of duty under common law.  Such duties are subject to the three-year limitations period applicable to civil actions.  Any duty imposed by tort law would have accrued on September 22, 1998, the date of settlement.  Consequently, these claims are time-barred.

Negligence claims are also subject to a three-year limitations period. *See Jacobson v. Sweeney*, 82 F. Supp. 2d 458, 461-62 (D. Md. 2000).   Having failed to raise his claims within three years of settlement, these claims are time-barred as well.

### D.  Libel and Defamation

Wilson alleges that Defendants provided information to major credit reporting agencies that contained "defaming injurious falsehoods" and "precluded the Plaintiff from obtaining a favorable credit rating, loan decisions or reasonable interest rates for more than five years."[26]  Plaintiff does not specify when the alleged reports were made, although he contends the resulting credit problems "lasted more than five years."[27]   As earlier noted, a one-year limitations period applies to defamation claims. *See* Md. Code Ann. Cts. & Judicial Proc. §§ 5-105 (2006).  The Complaint does not specify when the alleged reports were made. Wilson's contention that the results lasted more than five years,  absent specific evidence to the contrary, demonstrates this claim is untimely.

Further, to the extent this claim is based on credit reports showing Wilson defaulted on the mortgage with Ameriquest,  it is undisputed that Wilson stopped paying on the loan. The information allegedly reported to the credit agencies is factually correct. There is no evidence presented to conclude the information was reported out of malice.  Accordingly, even if this claim

---

[25] Complaint at 13,  ¶ 3(a) and (b).

[26] Complaint at 20, ¶ 4(A) and (B).

[27] *See id.*

were deemed timely, it fails to state a claim on which relief can be granted.[28]

In his reply to the Motion for Summary Judgment, Wilson asserts that the tolling of time is different for both active duty military and incarcerated personnel. No evidence is presented regarding Wilson's military service, and there is no evidence that Wilson was incarcerated at the times his claims accrued. Wilson does not state the term of his incarceration or indicate specific reasons why equitable tolling should apply while he was in prison. The Court notes that the Wilson initially filed the Complaint in this Court while he was in prison,[29] calling into question any suggestion that incarceration somehow impeded his timely filing of the claims presented here. In short, there is no basis presented to warrant application of equitable tolling.

## V. Conclusion

Upon careful review of the pleadings, exhibits, and applicable law, the Court will enter summary judgment in favor of Defendants and against Plaintiff. A separate Order consistent with this Memorandum Opinion follows.

April 3, 2007  /s/
Date    RICHARD D. BENNETT
    UNITED STATES DISTRICT JUDGE

---

[28] Wilson's attempt to hold Defendants liable for his arrest and criminal charges for housing violations on the property does not state a cause of action for defamation.

[29] See Original Complaint.